UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

United States of America

v.                                                  Crim. Action No. 1:10-CR-110-2

Waketa Coleman,

        Defendant.

## REPORT AND RECOMMENDATION
(Doc. 335)

Waketa Coleman, proceeding *pro se*, has moved pursuant to 28 U.S.C. § 2255 to

vacate, set aside, or correct her sentence in connection with her conviction for conspiring

to distribute heroin and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§

841(a)(1), (b)(1)(B), 846.  Coleman now contends that she received ineffective assistance

of counsel, in violation of the Sixth Amendment to the United States Constitution.  The

government opposes the Motion, maintaining that Coleman waived her right to file a

collateral attack in the Plea Agreement, and, in any event, received the effective

assistance of counsel.  (Doc. 341.)  For the reasons set forth below, I recommend that the

Motion be DENIED.

## Factual and Procedural Background

The facts are as follows:  On August 11, 2010, Coleman (along with certain co-

conspirators) was charged by indictment filed in the District of Vermont with one count

of conspiracy to distribute heroin and 50 grams or more of cocaine base, in violation of

21 U.S.C. §§ 846, 841(a)(1), (b)(1)(A).  The charges stemmed from allegations that, from the spring of 2006 to the fall of 2009, Coleman and her boyfriend, Todd Jarvis, ran a large-scale crack and heroin distribution ring in the central Vermont area.

After her arrest in the Southern District of New York, Coleman was arraigned in the District of Vermont and released on personal recognizance.  On August 5, 2011, the government filed an Information pursuant to 21 U.S.C. § 851 to establish that Coleman had a prior drug trafficking conviction.[1]  (Doc. 184.)  Soon thereafter, a special agent with the United States Drug Enforcement Administration filed a criminal complaint charging Coleman with knowingly threatening or intimidating a witness, in violation of 18 U.S.C. § 1512(b)(1).[2]  On this basis, an arrest warrant issued and the government filed a motion for revocation of conditions of release.  On November 22, 2011, Coleman was arrested in the Southern District of New York and released on bond, with various conditions.

On December 2, 2011, the United States Attorney's Office filed a single count Information charging Coleman with one count of conspiracy to distribute heroin and 28 grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(B)(iii), 846. (Doc. 226.)  A written Plea Agreement was filed contemporaneously with the Information, in which Coleman acknowledge that she faced a mandatory minimum of ten

---

[1] Two superseding indictments were returned adding more individuals to the conspiracy, but these indictments did not affect the charge against Coleman.

[2] Coleman was alleged to have had a chance encounter with a co-defendant/government witness in the lobby of the Southern District of New York Pretrial Services Office.  During this encounter, Coleman reportedly looked at the co-defendant and said, "You fucking snitch.  Watch what's gonna happen to you.  I got you."

years and a maximum possible sentence of life imprisonment, pursuant to 21 U.S.C. §

841(b)(1)(B)(iii), as a consequence of her plea to the Information. (Doc. 227.) The same

day, Coleman appeared before United States District Judge William K. Sessions III,

waived her right to proceed by way of Indictment, and pleaded guilty to the single count

contained in the Information. Throughout this process, Coleman was represented by

Attorney Barbara O'Connor. Coleman agreed to plead guilty to the single count

contained in the Information in exchange for the government's agreement not to

prosecute her for any other criminal offenses known to the United States, including the

witness intimidation charge. (Doc. 227.)

In addition to these terms, the Plea Agreement also contained the following waiver

of appellate rights:

> After consulting with counsel, WAKETA COLEMAN agrees that she will
> not file a direct appeal, or collaterally attack in any proceeding, including
> but not limited to a motion under 28 U.S.C. §§ 2255 or 2241, the conviction
> or sentence of imprisonment imposed by the Court if that sentence does not
> exceed 240 months. WAKETA COLEMAN understands and agrees that
> this waiver applies even if the sentence is based upon a Guidelines' analysis
> that differs from the analysis anticipated by the her [sic], her attorney or the
> United States. WAKETA COLEMAN expressly acknowledges that she is
> knowingly and intelligently waiving her appellate rights.[3]

During the change of plea hearing (Doc. 230; Doc. 339), Judge Sessions

specifically asked Coleman about the waiver of the right to appeal and collateral attack:

---

[3] The Plea Agreement was signed by an Assistant U.S. Attorney, as well as Coleman herself and her attorney, Barbara O'Connor. (Doc. 227 at 7.) Above her signature, Attorney O'Connor wrote "I do not approve of appellate waivers." (*Id*.) Under questioning from Judge Sessions during the change of plea hearing, Attorney O'Connor stated that she had "discussed it with Miss Coleman" and, despite O'Connor's own misgivings, Coleman was "willing to go ahead with it." (Doc. 339 at 6.) According to Attorney O'Connor, "I don't think I have to approve of that particular section in order for the plea to go forward." (*Id*.)

THE COURT: All right. Now, in addition, there is a clause that I'd like to talk to you about, that's paragraph 12, which indicates that you agree that you will not file a direct appeal or collaterally attack any proceeding pursuant to Section 2255 or 2241 if the court imposed a sentence that did not exceed 240 months. That is essentially a waiver of your appellate rights. That is, if the court imposed a sentence of less than 240 months, you agree not to appeal. You agree not to collaterally attack the conviction or the sentence. But that if a sentence is over 240 months, that doesn't apply.

THE DEFENDANT: Yes, your Honor.

THE COURT: Do you understand that?

THE DEFENDANT: I understand.

(Doc. 339 at 16.)

A pre-sentence investigation report ("PSR") was prepared in anticipation of Coleman's sentencing. The PSR concluded that the sentencing guidelines called for a life sentence based upon an assessment of Coleman's offense level and criminal history. The report concluded that Coleman's offense level was 43, and that her prior criminal convictions placed her in Criminal History Category V. The PSR reached the offense level calculation by applying the base offense level of the conspiracy charge pursuant to United States Sentencing Guideline ("USSG") §2D1.1 (level 38), and adding two levels due to the specific offense characteristic under USSG §1B1.3(a)(2) (Coleman's possession of a firearm), three levels for Coleman's role in the offense under USSG §3B1.1(b) (Coleman was the "manager or supervisor" of the enterprise), and two levels for obstruction of justice under USSG §3C1.1 (Coleman's threats to a co-defendant). Coleman was also accorded the two-level reduction for acceptance of responsibility pursuant to USSG §3E1.1(a). The report concluded that Coleman's prior criminal history

placed her in category V, based upon four prior convictions in New York and Virginia state courts, as well as the fact that Coleman committed the instant offense while under a criminal justice sentence. On this basis, the advisory sentencing guideline range was life imprisonment.

Coleman appeared for sentencing on May 22, 2012 before United States District Judge J. Garvan Murtha. (Doc. 322.) The penalty provisions for the offense of conviction called for a mandatory minimum ten-year sentence, established by the quantity of the substance charged, *see* 21 U.S.C. § 841(b)(1)(B), as well as the government's filing of an Information establishing a prior conviction for a felony drug offense, *see* 21 U.S.C. § 851. (Doc. 184.) The maximum penalty, pursuant to the statute, was life imprisonment.

Prior to sentencing, Attorney O'Connor filed a motion for a downward departure, based upon: (1) Coleman's extraordinary rehabilitation, as demonstrated by her compliance with the terms of release and her maintenance of employment; (2) the overstatement of the severity of her criminal history present in the pre-sentence investigative report; (3) Coleman's history of having suffered extraordinary abuse and neglect as a child and abuse as a young woman, resulting in mental and emotional conditions; (4) Coleman's diminished capacity, as indicated by her diagnosis of Antisocial Personality Disorder; and (5) the total combination of circumstances. (Doc. 309.) Following argument by counsel, the motion for a downward departure was denied. (Doc. 322.) Attorney O'Connor also sought a variance from the otherwise-applicable sentencing guideline range based upon the factors set forth in 18 U.S.C. § 3553,

incorporating many of the arguments from her motion for a downward departure. (Doc. 309 at 16.) Judge Murtha granted the motion for a variance, and imposed a non-guideline term of imprisonment of 144 months (12 years), followed by an eight-year term of supervised release. (Doc. 322.) Coleman was advised of her right to file a direct appeal. Coleman, however, did not appeal the conviction or sentence.

Coleman filed the instant § 2255 Motion on October 24, 2012. (Doc. 335.) She claims that she was denied the effective assistance of counsel for five reasons: (1) her counsel failed to file a notice of appeal as she requested after sentencing; (2) her counsel failed to challenge the quantity and purity of the drugs alleged in the indictment; (3) her counsel failed to challenge her "position" in the conspiracy; (4) her counsel underestimated her sentencing exposure; and (5) her counsel failed to raise issues related to the violation of her constitutional rights under "Amendments IV, V, VI, X, XIV." The government opposes the Motion on two principal grounds. (Doc. 341.) First, the government argues that Coleman's claims are barred by her waiver of her right to file a collateral attack. In the alternative, however, the government maintains that Coleman received the effective assistance of counsel. Upon Order of the Court (Doc. 337), the government has filed an affidavit of Attorney Barbara O'Connor (Doc. 341-2), with service upon Coleman (Doc. 341-3). Coleman has not replied to the government's response or O'Connor's affidavit.

## Discussion

## I.      Legal Standard

Under Section 2255 of Title 28 of the United States Code, a federal prisoner may move the sentencing court to vacate, set aside, or correct the sentence on the ground that such sentence was illegally imposed. *See* 28 U.S.C. § 2255(a). A collateral attack on a final judgment in a criminal case pursuant to 28 U.S.C. § 2255 is only available "for a constitutional error, a lack of jurisdiction in the sentencing court, or an error of law or fact that constitutes 'a fundamental defect that inherently results in complete miscarriage of justice.'" *Graziano v. United States*, 83 F.3d 587, 590 (2d Cir. 1996) (per curiam) (quoting *United States v. Bokun*, 73 F.3d 8, 12 (2d Cir. 1995)). To preserve the finality of criminal sentences and effect the efficient allocation of judicial resources, the scope of review on a 28 U.S.C § 2255 motion should be narrowly limited. *Napoli v. United States*, 32 F.3d 31, 35 (2d Cir. 1994) (citing *United States v. Addonizio*, 442 U.S. 178, 184 (1979)). In addition, a petitioner generally may not assert a claim in a § 2255 petition that he or she failed to raise on direct appeal unless the petitioner shows cause for the omission and prejudice resulting therefrom. *See Bousley v. United States*, 523 U.S. 614, 622 (1998); *Campino v. United States*, 968 F.2d 187, 190-91 (2d Cir. 1992). One exception to this rule is that a claim for ineffective assistance of counsel may be brought in a collateral attack regardless of whether it could have been raised on direct appeal, on the theory that the ineffective assistance of counsel itself provides the "cause" for the failure to appeal the issue. *See Massaro v. United States*, 538 U.S. 500, 504 (2003).

At the outset, the Court also notes that Coleman is a *pro se* litigant. As such, her submissions are held "'to less stringent standards than formal pleadings drafted by lawyers . . . .'" *Hughes v. Rowe*, 449 U.S. 5, 9 (1980) (quoting *Haines v. Kerner*, 404 U.S. 519, 520 (1972)). To this end, a court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). Nonetheless, a *pro se* litigant is not exempt from compliance with relevant rules of procedural and substantive law. *Traguth v. Zuck*, 710 F.2d 90, 92 (2d Cir. 1983).

## II.     Waiver of Right to Bring § 2255 Motion

Before reaching the merits of Coleman's claims, I first address the government's contention that this motion is barred by Coleman's express waiver of the right to file such a motion. A valid waiver would seemingly foreclose the instant Motion.

In the ordinary course, a criminal defendant has the right to appeal any sentence "imposed in violation of law." 18 U.S.C. § 3742(a)(1). The right to appeal, however, may be waived as part of a plea agreement. It is well-settled in the Second Circuit that a waiver of the right to appeal or collaterally attack a plea is "presumptively enforceable." *United States v. Arevalo*, 628 F.3d 93, 98 (2d Cir. 2010); *see United States v. Morgan*, 386 F.3d 376, 382 (2d Cir. 2004); *United States v. Monzon*, 359 F.3d 110, 116 (2d Cir. 2004); *Frederick v. Warden, Lewisburg Corr. Facility*, 308 F.3d 192, 195-96 (2d Cir. 2002), *cert. denied*, 537 U.S. 1146 (2003); *Garcia-Santos v. United States*, 273 F.3d 506, 508-09 (2d Cir. 2001) (per curiam); *United States v. Fisher*, 232 F.3d 301, 303 (2d Cir.

2000); *United States v. DeJesus*, 219 F.3d 117, 121 (2d Cir. 2000); *United States v. Rosa*, 123 F.3d 94, 97 (2d Cir. 1997). A valid waiver bars claims based on grounds that arose both before and after the plea agreement was entered into. *See Garcia-Santos*, 273 F.3d at 509. To be valid, the waiver "must always be knowingly, voluntarily, and competently provided by the defendant." *United States v. Gomez-Perez*, 215 F.3d 315, 318 (2d Cir. 2000); *accord United States v. Salcido-Contreras*, 990 F.2d 51, 53 (2d Cir. 1993) (per curiam) ("In no circumstance, however, may a defendant, who has secured the benefits of a plea agreement and knowingly and voluntarily waived the right to appeal a certain sentence, then appeal the merits of a sentence conforming to the agreement. Such a remedy would render the plea bargaining process and the resulting agreement meaningless.").[4]

In general, "[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748 (1970). As stated, courts will only enforce a waiver of appellate rights as long as the record clearly demonstrates that the waiver was both knowing (i.e., that the defendant understood the nature of the right to appeal and the consequences of waiving it) and voluntary (i.e., that the defendant was not coerced or threatened into agreeing to the waiver).

---

[4] In certain limited circumstances, waivers should not be enforced, "such as when the waiver was not made knowingly, voluntarily, and competently, when the sentence was imposed based on constitutionally impermissible factors, such as ethnic, racial or other prohibited biases, when the government breached the plea agreement, or when the sentencing court failed to enunciate any rationale for the defendant's sentence." *Gomez-Perez*, 215 F.3d at 319 (internal citations omitted). This case does not fall into any of these narrow categories enunciated in *Gomez-Perez*. The applicability of *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006) will be addressed in the next section.

The knowing and voluntary requirement is satisfied when the court holds a hearing and informs the defendant of the charges against her and the nature of her agreement, and when the defendant states that she understands the consequences of the agreement, including the acknowledgement that she is waiving her right to appeal. *See, e.g.*, *Morgan*, 386 F.3d at 379 (enforcing waiver where judge accepting the plea informed the defendant that "you will have no right to take an appeal from any aspect of this case," thus ensuring that there was "no realistic possibility that Morgan might have misunderstood the nature or source of the waiver"); *Garcia-Santos*, 273 F.3d at 508 (enforcing waiver after defendant had signed plea agreement, told magistrate judge that he read and understood plea agreement at hearing, did not attempt to appeal his sentence, and did not claim, in his later § 2255 petition, that he did not understand the waiver); *DeJesus*, 219 F.3d at 121 (holding that defendant's plea colloquy, in which judge specifically explained the terms of the waiver, "adequately establishe[d] that [the] defendant understood the terms of his waiver in the plea agreement"). In addition, the "knowing and voluntary" requirement is satisfied when a defendant signs a plea agreement indicating that she understands the terms of the agreement, and the defendant's attorney states that she has explained the terms of the plea agreement to the defendant. *See United States v. Braithwaite*, 242 F. App'x 765, 767 (2d Cir. 2007).

Here, I conclude that Coleman knowingly and voluntarily waived her right to appeal and to seek collateral review of the judgment and sentence. During the change of plea hearing, Judge Sessions explained the terms of the Plea Agreement to Coleman at some length, including the waiver of appellate and collateral attack rights, as required by

Federal Rule of Criminal Procedure 11(b)(1)(N). In the colloquy, Coleman indicated her

understanding of the terms of the waiver, as well as her unconditional assent to those

terms. (Doc. 339 at 16.) The written Plea Agreement also countermands any suggestion

that the waiver was not knowing and voluntary.[5] That Agreement clearly provides that

the waiver extends broadly, admits of no exceptions, and applies to both direct appeal and

collateral challenges to either the conviction or sentence. Most important for instant

purposes, the terms of the waiver provision also specifically foreclose the filing of a §

2255 motion. Coleman signed this Agreement (as did her counsel[6]), and indicated both

personally and through counsel that Coleman understood its provisions.[7] Even in the

instant Motion she has not claimed that she did not understand the terms of the waiver.[8]

---

[5] This Court recognizes that waivers of the right to appeal a conviction or sentence "are strictly and narrowly construed against the government, in recognition of its greater bargaining power in negotiating and the fact that the government usually drafts plea agreements." *Yushuvayev v. United States*, 532 F. Supp. 2d 455, 468 (E.D.N.Y. 2008). This agreement, however, is broadly drafted to incorporate all direct appeals and collateral attacks on the conviction and/or sentence, and also *specifically* extends to the instant § 2255 motion. *See Frederick*, 308 F.3d at 196 n.4 (holding that a provision phrased as a covenant not to file an appeal creates an enforceable waiver of the right to appeal).

[6] Of course, Attorney O'Connor wrote directly above her signature that she did not approve of the appellate waiver. *See supra* n.2. No such notation is written above Coleman's signature, however, and during the change of plea hearing it was made abundantly clear that O'Connor's personal refusal to assent to the waiver provision did not alter Coleman's position. Indeed, Coleman agreed to the provision notwithstanding her attorney's disagreement. *Id.*

[7] The Agreement itself also states that the waiver is knowing and intelligent. (Doc. 227 at 4.) This assertion in the waiver provision—a tautological belt to the plea hearing's suspenders—adds little to the analysis, and obviously does not foreclose Coleman's claim that her waiver was unknowing. *See Tellado v. United States*, 799 F. Supp. 2d 156, 173 (D. Conn. 2011).

[8] Coleman does not appear to challenge the voluntariness of the Plea Agreement or its waiver provision. A guilty plea is involuntary if it is "the product of actual or threatened physical harm, mental coercion overbearing the defendant's will, or the defendant's sheer inability to weigh his options rationally." *Miller v. Angliker*, 848 F.2d 1312, 1320 (2d Cir.), *cert. denied*, 488 U.S. 890 (1988). The record here discloses no such conditions. During the change of plea hearing, Judge Sessions inquired as to whether any threatening influence had compelled the guilty plea. (Doc. 339 at 14.) There is absolutely no evidence of any force or coercion, and Coleman has raised no allegations to the contrary.

It bears mention that the appellate waiver served the interests of both parties. The government avoided the expense and uncertainty of further litigation, *see Rosa*, 123 F.3d at 97, and Coleman received the benefit of the plea bargain, including the government's agreement to exempt her from prosecution for the witness intimidation charge. The waiver provision also incorporated a ceiling of 240 months above which the waiver would no longer be effective, providing assurance that Coleman could appeal a sentence of a certain severity. Having received their benefits, both parties must likewise bear the costs of the bargain. For Coleman, this means adhering to the appellate waiver. To do otherwise "would render the plea bargaining process and the resulting agreement meaningless." *Salcido-Contreras*, 990 F.2d at 53.[9]

Accordingly, when Judge Murtha sentenced Coleman to less than 240 months (the threshold set out in the waiver provision), the waiver became operative. At that time, because the waiver was knowingly and voluntarily entered into by Coleman, the waiver provision was valid and enforceable.

### III. Ineffective Assistance of Counsel

I next address Coleman's claimed deficiencies of counsel, applying the waiver provision where appropriate and reaching the merits as necessary.

#### A. Claim Regarding Failure to File Appeal

Coleman first claims ineffective assistance in her counsel's failure to file a notice of appeal even after Coleman's request that she do so. (Doc. 335 at 4.) In her affidavit,

---

[9] The government also advises in its opposition that, should this collateral attack be successful and the case returned to the district court, it will seek to withdraw from the plea agreement (based upon Coleman's material breach of the appellate waiver provision). (Doc. 341 at 6.)

Attorney O'Connor denies that any such request was ever made. (Doc. 341-2 at 1.) According to O'Connor, she "advised Ms. Coleman that her plea agreement required a waiver of appeal and that [O'Connor] did not approve of such waivers"; O'Connor "further advised her of her right to appeal at the time of her sentencing and she did not request that [O'Connor] file an appeal for her." (*Id*.) Coleman has not responded to O'Connor's affidavit.

The existence of an otherwise-valid waiver provision does not foreclose Coleman's first claim of ineffective assistance. In *Campusano v. United States*, 442 F.3d 770 (2d Cir. 2006), the Second Circuit addressed the issue of whether an attorney may be found to have rendered ineffective assistance by failing to file a notice of appeal despite the fact that the defendant expressly waived his right to pursue an appeal through a plea agreement. Specifically, in *Campusano*, the petitioner had executed a plea agreement that contained a promise not to appeal or otherwise challenge his sentence under 28 U.S.C. § 2255 "provided the sentence fell within a stipulated range of 108 to 135 months." *Campusano*, 442 F.3d at 772. The district court imposed a sentence of 108 months, and no direct appeal of his conviction or sentence followed. *Id*. Campusano subsequently filed a motion to vacate his sentence pursuant to 28 U.S.C. § 2255 alleging ineffective assistance of counsel. *Id*. In that pleading, Campusano claimed, *inter alia*, that he had timely instructed that his counsel file an appeal but that his counsel failed to comply with that directive. *Id*.

The district court denied Campusano's motion to vacate in its entirety. *Campusano v. United States*, No. 03 Civ. 2982, 2004 WL 1824112, at *6 (S.D.N.Y. Aug.

13, 2004). In reversing and remanding that case to the district court for an evidentiary hearing, the Second Circuit noted that although waivers of appeal are generally enforceable, "important constitutional rights require some exceptions to the presumptive enforceability of a waiver." *Campusano*, 442 F.3d at 774 (citation omitted). Because the Second Circuit "take[s] very seriously the need to make sure that defendants are not unfairly deprived of the opportunity to appeal, even after a waiver appears to bar appeal," *id*. at 775 (citation omitted), the *Campusano* court determined "that failure to file a requested notice of appeal constitutes ineffective assistance" of counsel even in the presence of an otherwise valid waiver of appellate rights, *id*. at 772.

Of course, this rule only applies where the district court finds that trial counsel in fact failed to file a requested notice of appeal. To determine whether the client actually requested an appeal, the Second Circuit held that when a district court is confronted with a claim by a habeas petitioner that his trial attorney wrongfully failed to file a notice of appeal despite the petitioner's explicit instructions to pursue that course of conduct, "the district court is . . . to conduct an evidentiary hearing to determine whether [petitioner] in fact instructed his attorney to file an appeal. If [petitioner] did give such an instruction, he is to be allowed a direct appeal." *Id*. at 777.

The Second Circuit did not, however, require that a full evidentiary hearing take place in all cases. Instead, "the district court has discretion to determine if a testimonial hearing will be conducted." *Id*. at 776. In *Chang v. United States*, 250 F.3d 79 (2d Cir. 2001), a case cited with approval in *Campusano*, the Second Circuit recognized that, where a petitioner and his counsel submit conflicting affidavits on the question of

whether defense counsel had denied the defendant the opportunity to testify in his own defense, the district court could properly conclude that "the testimony of [the petitioner] and his trial counsel would add little or nothing to the written submissions." *Chang*, 250 F.3d at 86.[10] In such cases, the court need not necessarily conduct a "full-blown testimonial hearing," as it is "within the district court's discretion to choose a middle road" that adequately expands the record without "the needless expenditure of judicial resources." *Id.* In previous cases, district courts in this circuit have often resolved such conflicting assertions without a full evidentiary hearing. *See, e.g.*, *United States v. Williams*, No. 06 Civ. 3950, 2009 WL 1162382, at *3 (S.D.N.Y. May 1, 2009); *Riggi v. United States*, No. 04 Civ. 7852, 2007 WL 2245595, at *9 (S.D.N.Y. Aug. 6, 2007) (collecting cases); *Lebron v. United States*, No. 06 Civ. 5049, 2007 WL 1159646, at *4 (S.D.N.Y. Apr. 18, 2007); *Shef v. United States*, No. 06 CV 2091, 2007 WL 812104, at *5 (E.D.N.Y. Mar. 13, 2007); *United States v. Smith*, No. 2:03 CR 74, 2006 WL 2009040, at *3 (D. Vt. July 14, 2006); *Lopez v. United States*, No. 03 CR 317, 2006 WL 2020389, at *2-3 (S.D.N.Y. July 12, 2006).

This case is ripe for such disposition. Coleman presents only conclusory allegations that she requested her counsel file a notice of appeal, with no documentation or additional details of the conversation to support her contention. Having been served

---

[10] In *Chang*, the Second Circuit affirmed a district court's denial of a petition for a writ of habeas corpus without having conducted a full evidentiary hearing where the petitioner had offered only "his own blank statements" that his trial counsel had ignored his requests to file notice of appeal and trial counsel submitted a detailed affidavit that "belie[d]" petitioner's claims. 250 F.3d at 82. The Second Circuit held that a hearing was required to determine whether petitioner had requested a notice of appeal be filed but that "the district court's review of the submitted papers constituted a sufficient evidentiary hearing on the facts of th[e] case." *Id.* at 80.

with a copy of Attorney O'Connor's affidavit (Doc. 341-3), and having been informed by court order that she has the right to respond to the affidavit (Doc. 337), Coleman has apparently opted to rest on her Motion. In contrast, the government filed an affidavit from Attorney O'Connor in which she recalled the specifics of her conversations with Coleman.[11]

The circumstances of the case also reduce the plausibility that Coleman would have asked O'Connor to file an appeal. In assessing the scope of an attorney's duty to consult with his or her client about an appeal, the Supreme Court has held that such a duty arises only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are non-frivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Roe v. Flores-Ortega*, 528 U.S. 470, 480 (2000). In determining whether a rational defendant would want to appeal, the Supreme Court stated:

> Although not determinative, a highly relevant factor in this inquiry will be whether the conviction follows a trial or a guilty plea, both because *a guilty plea reduces the scope of potentially appealable issues and because such a plea may indicate that the defendant seeks an end to judicial proceedings.* Even in cases when the defendant pleads guilty, the court must consider such factors as *whether the defendant received the sentence bargained for as part of the plea and whether the plea expressly reserved or waived some or all appeal rights.* Only by considering all relevant factors in a given case can a court properly determine whether a rational defendant would have desired an appeal or that the particular defendant sufficiently demonstrated to counsel an interest in an appeal.

---

[11] According to O'Connor's affidavit: "I advised Ms. Coleman that her plea agreement required a waiver of appeal and that I did not approve of such waivers. She chose to execute the plea agreement. I further advised her of her right to appeal at the time of her sentencing and she did not request that I file an appeal for her." (Doc. 341-2 at 1.)

*Id.* (emphasis added).

Applying this analysis here, there is no "reason to think" that Coleman, acting as a "rational defendant," would have wanted to appeal on these particular facts. *Id.* Coleman entered a guilty plea, signaling her desire to end judicial proceedings. The Plea Agreement specifically waived the right to appeal, providing further evidence that Coleman would not have had any reason to ask O'Connor to file an appeal. Furthermore, despite the PSR's recommendation of an advisory guideline imprisonment term of life, Judge Murtha sentenced Coleman to twelve years' imprisonment—only two years above the mandatory minimum. If Coleman were to appeal this sentence successfully and the case was remanded for re-sentencing, the government could argue for a much lengthier sentence.[12] By filing an appeal, Coleman would risk trading the twelve-year sentence for potential life imprisonment. It is highly implausible that Coleman would have requested an appeal be filed under these circumstances.

On this basis, I conclude that live testimony would add little to the written submissions, and credit the assertions of Attorney O'Connor in her affidavit. As a consequence, I find that no request for the filing of an appeal was made and recommend that the Court conclude that Coleman's first claim of ineffectiveness is without merit.

### B. Remaining Ineffective Assistance Claims

Coleman also claims that Attorney O'Connor was ineffective because she failed to challenge the quantity and purity of the drugs, failed to challenge Coleman's "position"

---

[12] In its response to Coleman's Motion, the government indicates that it will seek a lengthier sentence if the case is remanded for re-sentencing "based on Coleman's material breach of the appeal waiver provision." (Doc. 341 at 6.)

in the conspiracy, underestimated her sentencing exposure, and failed to raise issues related to the violation of her constitutional rights under "Amendments IV, V, VI, X, XIV." (Doc. 335 at 4-5.)

As a preliminary matter, the effect of the waiver provision on Coleman's remaining claims must be assessed. Notwithstanding the entry of an otherwise-valid appeal waiver, a defendant can nonetheless appeal a sentence if she can show that she was not adequately represented in plea negotiations with the government. *See United States v. Adams*, 448 F.3d 492, 497 (2d Cir. 2006); *United States v. Hernandez*, 242 F.3d 110, 113-14 (2d Cir. 2001) (per curiam); *United States v. Djelevic*, 161 F.3d 104, 107 (2d Cir. 1998) (per curiam) (citing *United States v. Henderson*, 72 F.3d 463, 465 (5th Cir. 1995)); *Rosa*, 123 F.3d at 98; *Ready*, 82 F.3d at 555; *United States v. Cockerham*, 237 F.3d 1179 (10th Cir. 2001); *Balbuena v. United States*, 104 F. Supp. 2d 218, 220 (S.D.N.Y. 2000). In other words, a waiver provision in a plea agreement cannot be treated as valid if the plea agreement was only entered into due to the ineffectiveness of counsel during the plea negotiation process. The appellate waiver should not extend to such claims of ineffectiveness because the waiver itself would be tainted by the alleged deficiencies of counsel. *See Jones v. United States*, 167 F.3d 1142, 1145 (7th Cir. 1999) ("Justice dictates that a claim of ineffective assistance of counsel in connection with the negotiation of a cooperation agreement cannot be barred by the agreement itself—the very product of the alleged ineffectiveness.").

> Of course, the refusal to apply such a waiver provision in these circumstances only allows appellate review of the constitutionality of the process by which the plea agreement was consummated. If the constitutionality of that process passes muster, the plea agreement's waiver would bar any consideration by the appellate court of issues that fall within the scope of that waiver.

*Hernandez*, 242 F.3d at 114. A valid appeal waiver precludes a defendant from attacking the sentence in a collateral proceeding by a claim of ineffective assistance during sentencing. *See Garcia–Santos*, 273 F.3d at 508-09.

Here, none of the claimed deficiencies of counsel infected the Plea Agreement. Each error that Coleman alleges in the instant motion occurred long after the negotiation of the Plea Agreement, either at sentencing or thereafter. At no point during the change of plea hearing did Coleman express any dissatisfaction with the representation of O'Connor in the negotiation of the Plea Agreement. Indeed, when asked whether she was satisfied by her counsel's work on her behalf, Coleman responded that she was "more than satisfied." (Doc. 339 at 10.) *See United States v. Torres*, 129 F.3d 710, 715 (2d Cir. 1997) ("A defendant's bald statements that simply contradict what [s]he said at h[er] plea allocution are not sufficient grounds to withdraw the guilty plea."). Because none of the claimed deficiencies of counsel affected the terms of the Plea Agreement, the waiver provision should be given full effect.

But even if this Court allowed the collateral attack to proceed to the merits, Coleman's claim would fail. "[T]he proper standard for attorney performance is that of reasonably effective assistance." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The essence of an ineffective assistance claim is that counsel's unprofessional errors so

upset the adversarial balance between defense and prosecution that the proceeding was rendered unfair and the outcome therefore suspect. *See Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). Thus, a defendant must establish (1) that counsel made errors so serious that she was deprived of reasonably competent representation and (2) that counsel's deficient performance prejudiced the defense. *See Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000) (citing *Strickland*, 466 U.S. at 687-91)). The burden is on the defendant to establish both prongs of an ineffective assistance claim. *See Byrd v. Evans*, 420 F. App'x 28, 30 (2d Cir. 2011) (citing *Kimmelman*, 477 U.S. at 381).

Coleman has not shown deficient performance by Attorney O'Connor. Coleman's allegations of Attorney O'Connor's shortcomings are contradicted by the record evidence. Although Coleman alleges that O'Connor failed to challenge the quantity and the purity of the drugs involved in her criminal activity, O'Connor's sentencing memorandum "object[ed] to the 4.5 kilogram of cocaine base estimate used to justify the advisory Guideline range." (Doc. 309 at 6.) O'Connor argued that "[t]his estimate [was] made by using foggy memories of drug addicts and cooperators," with no documentary evidence to corroborate the amount alleged. (*Id.*) After plea negotiations, O'Connor secured a bargain in which Coleman pleaded guilty to about half the quantity (28 grams) of the original charge in the indictment (50 grams). Furthermore "drug purity" is of little consequence as the Information charged that Coleman conspired with others to distribute a mixture or substance which contained only a "detectable amount" of heroin and 28 grams or more of a mixture or substance containing a "detectable amount" of cocaine base.

Although Coleman alleges that O'Connor failed to challenge her "position" in the conspiracy, O'Connor's lengthy sentencing memorandum contends that "[a]t no time was she a leader or even equal partner in this enterprise." (*Id*. at 4.) Finally, Coleman alleges that O'Connor underestimated her sentencing exposure—but every document associated with sentencing, from the pre-sentence investigation report to the sentencing memoranda of both the government and Coleman, proceeded under the assumption that Coleman faced a mandatory minimum of ten years' imprisonment and a guideline life sentence. In short, the record bears out that O'Connor provided excellent representation for Coleman, securing her considerable benefits during plea negotiation and raising numerous mitigating factors at length during sentencing. On the basis of these mitigating factors, O'Connor moved for both a downward departure and a variance from the guidelines. Judge Murtha granted the latter motion.

Nor can Coleman show prejudice arising from O'Connor's performance. In fact, the quality of representation is reflected by the sentence imposed—Judge Murtha sentenced Coleman to twelve years' imprisonment when Coleman faced a statutory mandatory ten-year minimum sentence *and* a sentence of life imprisonment under the Sentencing Guidelines. Quite simply, Attorney O'Connor could not have done much better for Coleman, and surely could have done immeasurably worse (a life sentence). There is no basis to conclude that O'Connor was in any way ineffective in her representation of Coleman.

Finally, in her affidavit O'Connor also denies Coleman's claim that she failed to raise issues related to the "violation of constitutional rights" under "Amendments IV, V,

VI, X, XIV."  (Doc. 341-2 at 2.)  Given the absence of any specific allegations from

Coleman other than a listing of amendments under which her rights were allegedly

violated, this claim does not rise to the level of proper argument.  In any event, a

thorough review of the record does not reveal that Coleman was denied any of her rights

under these constitutional amendments.

## Conclusion

For the foregoing reasons, I recommend that Coleman's Motion under § 2255

(Doc. 335) be DENIED.

Dated at Burlington, in the District of Vermont, this 24th day of January, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge


Any party may object to this Report and Recommendation within fourteen days after
service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge
and all parties, written objections which shall specifically identify those portions of the
Report and Recommendation to which objection is made and the basis for such
objections.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2), 6(a), 6(d); L.R. 72(c).
Failure to timely file such objections operates as a waiver of the right to appellate review
of the District Court's adoption of such Report and Recommendation.  *See* Fed. R. Civ. P.
72(a); *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).